1
2
3
4
5
6

HONORABLE RICHARD A. JONES

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

ANGELA HENDERSON,

10

       Plaintiff,

11

    v.

CASE NO. C09-1723RAJ

12

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,

ORDER

13

       Defendant.

14
15

## I.  INTRODUCTION

16

     This matter comes before the court on a motion for partial summary judgment

17

from Plaintiff Angela Henderson.  Dkt. # 61.  The court finds oral argument unnecessary,

18

and no party requested it.  For the reasons stated herein, the court GRANTS the motion.

19

## II.  BACKGROUND & ANALYSIS

20

     In October 2006, Jacob Feroe unintentionally drove his car into Ms. Henderson's

21

car, injuring her.  She was driving southbound on 26th Avenue Southwest in Seattle,

22

heading for the intersection with Southwest 112th Street.  Mr. Feroe was traveling

23

westbound on 112th Street when the front of his car hit the side of Ms. Henderson's car.

24

There is a stop sign at the intersection for drivers on 112th Street, but not for drivers on

25

26th Avenue.  No one disagrees about these facts.

26

     This lawsuit arises between Ms. Henderson and her car insurer, Defendant

27

Metropolitan Property and Casualty Insurance Company ("MetLife").  After receiving a

28

ORDER – 1

policy-limit settlement from Mr. Feroe's insurer, she made a claim for uninsured motorist ("UIM") benefits from MetLife.  When MetLife declined to pay her as much as she claimed, she sued not only for breach of the policy, but for bad faith handling of her claim.  The present motion concerns only her claim for breach of the policy.  As to that claim, MetLife now stands in Mr. Feroe's shoes, and can assert any defenses that he might have had to Ms. Henderson's claim for tort liability.  In this motion, Ms. Henderson seeks a partial summary judgment that Mr. Feroe was at fault in the accident, that she is not even partially at fault, and that she did not fail to mitigate her damages.

There are no legal disputes here, as the principles of negligence that apply are well established.  Instead, the parties argue over what happened on the day of the accident.  These are factual disputes, and the court has only limited authority to resolve those disputes on summary judgment.  The court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party, in this case MetLife.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

One might expect that the evidence about what happened in the accident would consist primarily of testimony (or, at the summary judgment stage, declarations, affidavits, and deposition testimony) from Ms. Henderson, Mr. Feroe, and anyone who witnessed or investigated the accident.  There is, however, not a shred of evidence from Mr. Feroe in the record before the court.  Ms. Henderson has been deposed, but she candidly admits that the trauma of the accident has left her with only limited memories of

ORDER – 2

1    what happened.  Instead, the parties rely largely on the accident report of Sergeant

2    Marcus Williams, the King County Sheriff's Deputy who responded to the scene of the

3    accident.

4            According to the accident report, Ms. Henderson said at the scene that she was

5    driving southbound in 26th Avenue, that she saw Mr. Feroe's car approaching westbound

6    at the intersection, and realized that he was not going to stop at the stop sign.  She did not

7    believe she could brake in time to avoid a collision, so she attempted to accelerate to get

8    through the intersection before he could collide with her.  She was not successful, and he

9    struck her broadside.

10           According to the report, Mr. Feroe said at the scene that he stopped at the stop

11   sign.  Sgt. Williams noted that this was not only inconsistent with Ms. Henderson's

12   statement, it was inconsistent with the physical evidence at the scene, which included

13   skid marks, another car that Ms. Henderson's car struck after Mr. Feroe ran into her, and

14   the fact that her car came to rest in the front yard of a residence on 112th Street on the

15   west side of the intersection.  The report also indicates that Katie-Marie Stamp was a

16   passenger in Mr. Feroe's car who initially supported Mr. Feroe's version of events.  The

17   next day, she telephone Sgt. Williams and recanted her statement, admitting that that Mr.

18   Feroe did not stop, but asserting that he did at least slow down.  In a supplement to his

19   report, Sgt. Williams concluded that "[b]ased on the scene evidence and the amount of

20   energy required to land in the front yard . . . , it can only be concluded that [Mr. Feroe]

21   did not stop and engaged [Ms. Henderson's car] at a speed of 10-20 mph."

22           In connection with this litigation, Ms. Henderson hired Richard Chatman, an

23   expert in traffic accident reconstruction.  He considered the physical evidence recounted

24   in the accident report as well as his own measurements of the relevant dimensions of the

25   intersection and knowledge of the weights of the vehicles involved in the accident.  Using

26   mathematics, he concluded that it would have been impossible for Mr. Feroe to accelerate

27   from a stop at the stop sign to a speed sufficient to strike Ms. Henderson's car and cause

28   ORDER – 3

it to move to the west as the physical evidence indicated.  He concluded that Mr. Feroe did not stop, and was traveling between 25 and 29 miles per hour, based on the assumption that Ms. Henderson was traveling between 30 miles per hour and 35 miles per hour.

Ms. Henderson's own deposition testimony reflects her incomplete memory, but is consistent with the conclusions that Sgt. Williams and Mr. Chatman reached.  She recalls driving between 30 and 35 miles per hour.

Ms. Henderson also admits that at the time of the accident, she had an open and full can of beer between her legs as she drove.  Sgt. Williams' report also reflects as much.  There is no evidence whatsoever that she was under the influence of alcohol, and MetLife does not contend otherwise.

What MetLife does contend is as follows.  First, it argues that a jury could believe Mr. Feroe's statement that he stopped at the stop sign, and thus could conclude that he did not cause the accident or that he is only partially at fault.  Second, it argues that a jury could find that the can of beer was a distraction that contributed to the accident.  MetLife is wrong on both counts.

The court assumes for the purposes of this order that a jury could believe Mr. Feroe's statement that he stopped at the intersection.  That is a dubious proposition at best.  An expert has declared that it is physically impossible for Mr. Feroe to have stopped and then accelerated to a speed sufficient to cause the accident in the manner established by the physical evidence.  The police officer at the scene reached the same conclusion.  MetLife has submitted no evidence to the contrary.  MetLife has not disputed that the physical evidence at the scene was as described in Sgt. Williams' report and in Mr. Chatman's report.  It has not offered any explanation of how Mr. Feroe could have stopped at the stop sign and still collided with Ms. Henderson's car in a way that produced the physical evidence at a scene.  MetLife ignores that Mr. Chatman's assumptions about Ms. Henderson's speed were not plucked from the air, but rather were

ORDER – 4

based on the physical evidence at the scene. Had Ms. Henderson been traveling faster than 30 to 35 miles per hour, Mr. Feroe would have to have been traveling even faster that the speed Mr. Chatman calculated to cause her car to move west as much as it did after the collision.

The court need not determine whether Mr. Feroe's statement that he stopped is false as a matter of law, however, because there is no *admissible* evidence from Mr. Feroe (or anyone else) that he stopped at the intersection. The only evidence that Mr. Feroe stopped is Sgt. Williams' recitation of his statement in his accident report. That is hearsay evidence, and Ms. Henderson has objected to it. Of course, the accident report itself is perhaps hearsay as well,[1] but both parties have agreed not to object to the report to the extent it recounts the physical evidence at the scene. Indeed, MetLife made an explicitly limited hearsay objection: "If the court is inclined to disregard the witness statements contained in the report, then defendant request the court also disregard the officer's conclusions based on those statements." MetLife Opp'n at 8 n.2. In this case, the court has not considered Sgt. Williams' conclusions based on witness statements, but rather his conclusions based on the physical evidence at the scene.[2]

MetLife contends that Ms. Henderson waived *any* hearsay objection to the report by relying on it at summary judgment, but the court finds otherwise. In her summary judgment motion, Ms. Henderson relied on the report solely for its account of the physical evidence at the scene, an account on which Mr. Chatman relied. While that might waive any hearsay objection to MetLife using the report for similar purposes, it does not waive her right to object to hearsay contained within the report. Mr. Feroe's statements (and the statements of Ms. Stamp) are hearsay within the hearsay report, and

---

[1] Ms. Henderson argues that because Sgt. Williams signed his report under penalty of perjury, it can serve as an affidavit or declaration, which is admissible for purposes of a summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A). The court's disposition today does not require it to resolve this issue.

[2] The court has recounted Sgt. Williams' versions of the witnesses' statements for context, but has not credited the truth of those statements.

ORDER – 5

1   Ms. Henderson has properly objected to them.  The court sustains the objection.

2   Evidence at the summary judgment stage must be either admissible evidence or evidence

3   that could be presented in admissible form at trial.  Fed. R. Civ. P. 56(c)(2).  Here, there

4   is no suggestion that Mr. Feroe or Ms. Stamp will testify at trial, and thus no suggestion

5   that MetLife can overcome Ms. Henderson's hearsay objection.

6           With no admissible evidence from Mr. Feroe, the only evidence before the court is

7   that he failed to stop at the stop sign and collided with Ms. Henderson.  That establishes

8   that Mr. Feroe is at fault as a matter of law.  It remains to decide whether a jury could

9   find that Ms. Henderson was also at fault.  MetLife, as the proponent of a comparative

10  fault defense, would bear the burden of proving at trial that she was partially at fault.

11  *Cox v. Spangler*, 5 P.3d 1265, 1273 (Wash. 2000).

12          There is no evidence in the record from which a jury could conclude that Ms.

13  Henderson was even partially at fault.  There is no evidence that she drove negligently or

14  made an error that contributed to the accident.  There is no evidence that she was

15  speeding.  MetLife suggests that a jury could conclude from Ms. Henderson's admittedly

16  incomplete memory of the accident that she was speeding.  MetLife is mistaken.  In order

17  to conclude that Ms. Henderson was speeding, a jury would have to have some evidence

18  that she was speeding.  A juror could not conclude that her foggy memory about her

19  speed means that she was speeding, as that would be impermissible speculation.  MetLife

20  has pointed to no evidence that she was speeding, and thus cannot proceed to trial in the

21  hopes that a juror will speculate otherwise.

22          The only other theory that MetLife has advanced to support a comparative fault

23  defense is that a jury could conclude that the beer in Ms. Henderson's lap was a

24  distraction.  Again, MetLife seeks to rely on the possibility of juror speculation.  A drink

25  between Ms. Henderson's legs could be a distraction, of course, but so could any number

26  of items in her car.  Ms. Henderson could have been paying attention to her car radio, or

27  to her cell phone, or adjusting her mirrors, or the like.  MetLife cannot create a factual

28  ORDER – 6

issue, however, merely by pointing to potential distractions and asking the jury to speculate that they were actual distractions to Ms. Henderson.  There is no evidence that Ms. Henderson was distracted by the beer or anything else.  There may be potential driver distractions that are so inherently disruptive that a jury might be able to infer from their mere presence that they played a role in a traffic accident.  A drink between a driver's legs is not one of those distractions.

Before concluding, the court notes that MetLife explicitly declined to oppose Ms. Henderson's motion to the extent it seeks summary judgment against MetLife's defense that she failed to mitigate her damages.  Accordingly, the court will grant her motion in that respect.

### III.  CONCLUSION

For the reasons stated above, the court GRANTS Ms. Henderson's motion for partial summary judgment.  Dkt. # 61.  As a matter of law, Mr. Feroe was at fault in the accident, Ms. Henderson was not even partially at fault, and Ms. Henderson mitigated her damages.

DATED this 22nd day of December, 2010.


The Honorable Richard A. Jones
United States District Judge

ORDER – 7