HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGELA HENDERSON,

       Plaintiff,

    v.

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,

       Defendant.

CASE NO. C09-1723RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion for partial summary judgment from Defendant Metropolitan Property and Casualty Insurance Company ("MetLife"). Dkt. # 75.  The court finds oral argument unnecessary, and only Plaintiff Angela Henderson requested it.  For the reasons stated herein, the court GRANTS the motion in part and DENIES it in part.

## II.  BACKGROUND

After receiving a policy-limit settlement from the insurer of a driver who collided with her in October 2006, Angela Henderson turned to her own insurer, MetLife, to recover additional compensation via her underinsured motorist ("UIM") policy.  In a December 2008 letter, she demanded $50,000, which she believed to be the limit of her UIM policy.  Heller Decl. (Dkt. # 11), Ex. 9.  MetLife offered to pay her $1200 in settlement of the UIM claim.  *Id.*, Ex. 10.  In a final pre-litigation demand in July 2009,

ORDER – 1

Ms. Henderson reiterated her demand for $50,000, which she still believed to be her policy limit. *Id.*, Ex. 12. After Ms. Henderson sent MetLife a 20-day notice that she intended to file a suit invoking Washington's Insurance Fair Conduct Act ("IFCA"), MetLife raised its offer to $2000. *Id.*, Exs. 15-16; *see also* RCW 48.30.015(8) (stating IFCA's 20-day notice requirement).

On December 2, 2010, the day before it removed this lawsuit from King County Superior Court to this court, MetLife revealed that Ms. Henderson's UIM policy limit was $100,000, not $50,000. Heller Decl. (Dkt. # 11), Ex. 17. There is no dispute that the declarations page MetLife had previously sent her incorrectly stated a $50,000 UIM limit. The next day, MetLife offered Ms. Henderson $30,000 to settle her claims. *Id.*, Ex. 18.

Ms. Henderson responded to that offer by insisting that it was inadequate, but demanding that MetLife immediately pay $30,000 and then resolve her claim that she was owed more. *Id.*, Ex. 19. MetLife responded that it had not conceded that Ms. Henderson was entitled to $30,000, it had merely offered that amount to settle her claims. It declined to pay any amount until Ms. Henderson executed an "appropriate release." *Id.*, Ex. 20. Ms. Henderson interpreted this to mean that she would have to release all of her claims in this litigation before she would receive a payment, and MetLife does not contest her interpretation.

MetLife assigned an insurance adjuster to Ms. Henderson's claim not long after the October 2006 car accident. In February 2007, the adjuster discovered that her UIM policy limit was $100,000, not $50,000. Krenz Depo. at 41-46, 95-96. Thus, there is no dispute that MetLife knew since February 2007 that Ms. Henderson's UIM policy limit was $100,000, and yet did not reveal this fact despite multiple written demands in which Ms. Henderson stated that she believed her policy limit was $50,000.

Ms. Henderson has sued not only to recover the policy benefits that MetLife denied her, but also for IFCA violations. Among other things, Ms. Henderson contends that MetLife violated several provisions of the Washington Administrative Code

ORDER – 2

("WAC") governing insurance claim practices.  In this motion, MetLife seeks summary judgment that it did not violate three of the WAC provisions on which Ms. Henderson relies.  Ms. Henderson pointed to a fourth WAC provision in her opposition to the motion, and the court addresses that as well.

### III.  ANALYSIS

In this motion, the court applies the familiar summary judgment standard, drawing all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

**A.  The Court Cannot, At This Stage of Litigation, Sever Ms. Henderson's Allegations Regarding MetLife's Delay in Disclosing Her True Policy Limits.**

Ms. Henderson contends that two WAC provisions bear on MetLife's failure to accurately disclose her UIM policy limits.  The first is WAC § 284-30-330(1), which declares that "[m]isrepresenting pertinent facts or insurance policy provisions" is an unfair claim settlement practice.  The second is WAC § 284-30-350(1):

> No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented.

ORDER – 3

1    There is no question that MetLife violated the letter of these WAC provisions by

2 delaying its disclosure of Ms. Henderson's true policy limit.  MetLife asserts that it did

3 not act unreasonably in delaying that disclosure.  The court previously ruled that the

4 WAC provisions at issue have an implicit reasonableness requirement.  Jul. 19, 2010

5 Order (Dkt. # 34) at 5 (relying on *Keller v. Allstate Ins. Co.*, 915 P.2d 1140, 1145 (Wash.

6 App. 1996)).  Now Ms. Henderson advances an argument she has not previously made,

7 that the passage of IFCA in 2007 means that insurers face strict liability for violating

8 WAC provisions that do not have an explicit reasonableness limitation.  The court need

9 not consider that argument now, because even if the provisions contain an implicit

10 reasonableness limitation, a jury could find in this case that MetLife's conduct was

11 unreasonable.  MetLife has admitted that its claims adjuster knew of the higher policy

12 limit and declined to disclose it.  A jury could find this unreasonable.

13    MetLife also argues that Ms. Henderson suffered no damage or prejudice from its

14 delay in revealing her policy limits, and thus cannot sue for violations of the WAC

15 provisions at issue.  It contends that its valuation of her claim was much less than

16 $50,000, and thus it made no difference that it did not reveal that her policy limit was

17 $100,000.  Ms. Henderson contends that she was damaged, and that even if she was not,

18 IFCA does not require her to prove damage arising from a WAC violation.

19    Both parties focus on what damages flow from MetLife's alleged violation of

20 these two WAC provisions.  But Ms. Henderson's lawsuit is not so limited.  She has sued

21 for unreasonable denial of her claim.  She has pointed to numerous violations of the

22 WAC that, whether or not they comprise standalone violations of the law, also support

23 her contention the denial was unreasonable.  If the jury concludes that MetLife

24 unreasonably denied her claim, then the jury will decide her damages.  It will not,

25 however, assign a separate amount of damage to each violation of the WAC that it finds.

26 Only in the highly unlikely event that the jury finds that MetLife did not act unreasonably

27

28 ORDER – 4

1  in denying her claim but nonetheless violated one or more WAC provisions will the jury

2  consider what damages flow specifically from those violations.

3  The court declines MetLife's invitation to parse liability on Ms. Henderson's

4  claim as it proposes.  A jury is entitled to consider whether MetLife's delay in revealing

5  her policy limits violates the WAC and what damages she is owed.  The question of

6  whether the jury can assess damages flowing solely from violation of the WAC

7  provisions in question can be addressed in jury instructions and verdict forms.

8  The court makes this determination for the reasons it has already stated, but it is

9  worth observing that the argument MetLife advances would insulate insurers from

10  liability for unquestionably unfair practices.  A jury could find in this case that MetLife

11  intentionally delayed in disclosing Ms. Henderson's true policy limit.  It could find that it

12  did so in an effort to convince her to accept a lower settlement offer.  In MetLife's view,

13  however, it can avoid a jury simply by declaring that it placed a low value on Ms.

14  Henderson's claim.  Ms. Henderson is entitled to have a jury assess what value MetLife

15  placed on her claim, and assess MetLife's delay in revealing her policy limits in light of

16  that value.  The court concludes that neither the WAC provisions at issue nor IFCA are

17  intended to permit insurers to avoid a jury's scrutiny of unfair claims practices.

18  **B.   MetLife Did Not Violate WAC § 284-30-330(12).**

19  The third provision at issue is WAC § 284-30-330(12), which makes the following

20  an unfair practice:

21      Failing to promptly settle claims, where liability has become reasonably
22      clear, under one portion of the insurance policy coverage in order to
        influence settlements under other portions of the insurance policy coverage.

23  Ms. Henderson invokes this provision because she believes that MetLife admitted

24  in its final settlement offer that Ms. Henderson was entitled to at least $30,000, and

25  nonetheless declined to pay that amount.  The court has already observed that Ms.

26  Henderson is mistaken in her belief that MetLife's settlement offer was admission of the

27

28  ORDER – 5

value of her claim.  Jul. 19, 2010 Order (Dkt. # 34) at 4.  Assuming, however, that a jury concludes that MetLife had decided that Ms. Henderson's claim was worth a certain amount, the question is whether it is a violation of WAC § 284-30-330(12) to fail to pay that amount pending resolution of her claim for additional compensation.  The answer is no.

The court finds that WAC § 284-30-330(12) does not apply to an insurer who merely declines to pay the amount it believes it owes under a single coverage while it disputes an insured's claim for a higher amount.  The provision addresses the leveraging of a "reasonably clear" claim "under one portion of the insurance policy" to influence a settlement as to "other portions of the insurance policy coverage."  In this case, for example, MetLife paid Ms. Henderson $10,000 early in the claims process, as $10,000 was the limit of her personal injury protection ("PIP") coverage.  MetLife thus conceded, early on, that it was "reasonably clear" that Ms. Henderson was entitled to at least $10,000 for her injuries.  If it had refused to pay that amount unless Ms. Henderson agreed to waive or limit any eventual claim for compensation under her UIM policy, it would unquestionably have violated WAC § 284-30-330(12).  This situation is different.  Assuming for the sake of argument that MetLife believed it was "reasonably clear" that Ms. Henderson was entitled to $2000 for her UIM claim, WAC § 284-30-330(12) does not prevent it from refusing to pay that amount while it resolved Ms. Henderson's contention that her UIM claim was worth more.  The court reaches this conclusion because the Washington Insurance Commissioner would not have used language limiting this provision to claims made under more than one policy coverage if it had intended to force insurers to make partial payments on a disputed claim arising under a single coverage.  If the Insurance Commissioner had intended to make it unlawful to refuse to pay what the insurer believed to be the reasonable value of a single-coverage claim while contesting the insured's claim for a higher amount, it would have written a regulation expressly addressing that practice.  The court does not suggest that MetLife's alleged

ORDER – 6

1   conduct is not unlawful.  It may constitute an unreasonable practice, and may violate one

2   or more other WAC provisions.  It does not, however, violate WAC § 284-30-330(12).

3   **C.     MetLife Did Not Violate WAC § 284-30-350(5).**

4           Finally, the court considers whether MetLife violated WAC § 284-30-350(5),

5   which provides that "[n]o insurer shall request a first party claimant to sign a release that

6   extends beyond the subject matter that gave rise to the claim payment."  Ms. Henderson

7   believes that MetLife violated the provision by insisting on a release of all of her claims

8   in this litigation before making any payment.

9           The Washington Supreme Court has already rejected Ms. Henderson's

10  interpretation of WAC § 284-30-350(5) in *Nationwide Mut. Fire Ins. Co. v Watson*, 840

11  P.2d 851 (Wash. 1992).  In *Watson*, the court held that WAC § 284-30-350(5) does not

12  prevent an insurer from executing a general release of all claims arising under an

13  insurance policy.  840 P.2d at 858-59.  MetLife did not violate the provision by insisting

14  on a general release in this case.

15                              **IV.   CONCLUSION**

16          For the reasons stated above, the court GRANTS MetLife's motion (Dkt. # 75) to

17  the extent it seeks summary judgment that it did not violate WAC § 284-30-330(12) or

18  § 284-30-350(5).  It DENIES the motion in all other respects.

19          DATED this 22nd day of December, 2010.

20

21

22

23                              The Honorable Richard A. Jones
                                United States District Judge
24

25

26

27

28  ORDER – 7